United States District Court
Southern District of Texas
**ENTERED**
August 19, 2025
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| **ANDREW BURKE,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:22-CV-03506** |
| | § | |
| **OFFICER ROLLINS,** | § | |
| | § | |
| **Defendant.** | § | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Andrew Burke, an inmate in the custody of the Texas Department of Criminal Justice, filed this civil-rights action under 42 U.S.C. § 1983. On February 22, 2024, the Court entered default judgment against the sole remaining defendant, Officer Rollins.[1] Accordingly, the only question before the Court is the amount of damages to which Burke is entitled.

For reasons below, the Court **AWARDS** Andrew Burke (1) $1,500 in out-of-pocket medical expenses; (2) $1,500 for pain and suffering; (3) $350 in reasonable court costs; and (4) post-judgment interest.

## I. BACKGROUND

Plaintiff Andrew Burke, a prisoner in the custody of the Texas Department of Criminal Justice ("TDCJ") proceeding pro se and *in forma pauperis*, (*see* Dkt. No. 19), filed this civil-rights complaint under 42 U.S.C. § 1983 alleging that he was subjected to

---

[1] Officer Rollins's first name is not in the record.

excessive force while confined at the Fort Bend County Jail, (*see* Dkt. No. 1 at 1, 4); (Dkt. No. 1-1).

Burke's Complaint and subsequent filings[2] allege that on December 15, 2021, he was housed in an unsanitary infirmary cell that smelled of urine. (Dkt. No. 60 at 2). He requested a transfer, but officials denied the request. (*Id.*). After attempting to tamper with the sprinkler system to force a move, Burke was labeled a security threat. (*Id.*). When officers arrived, Burke complied with orders to cuff up and was escorted to a padded cell. (*Id.* at 3).

Standard protocol required officers to secure Burke in the padded cell, uncuff him through the slot opening, and then direct him to undress and pass his clothes through the slot. (*Id.*). That is not what happened. (*Id.* at 4). Instead, after arriving at the padded cell, ten officers—including Defendant Rollins—entered the cell while Burke remained handcuffed. (*Id.*). They ordered him to remove his clothes. (*Id.*). When he explained that he could not do so while handcuffed, the officers accused him of disobeying orders. (*Id.*).

2 Burke's Complaint, a prison form, contains only one handwritten paragraph of allegations. (Dkt. No. 1 at 4). Given his *pro se* status, the Court considered his later "Motion to Present Additional Evidence," (Dkt. No. 60), solely to clarify well-pled allegations raised in Burke's Complaint. The Court did not consider allegations raised only in later filings to assess Rollins's liability or determine Burke's damages. *See Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis *in the pleadings* for the judgment entered." (emphasis added)); *SEC v. McDuff*, 697 F.App'x 393, 394 (5th Cir. 2017) (per curiam) ("A default judgment must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" (quoting *Nishimatsu*, 515 F.2d at 1206)).

The officers then forcibly ripped off his clothes, pointed a taser at him, and used a sharp object to cut away his clothing. (*Id.*). Burke states that he defended himself, (*id.* at 6–7), and during the altercation, Rollins punched him in the neck and head while other officers held him down, (*id.* at 7–8); (Dkt. No. 1 at 4).

On October 11, 2022, Burke sued Rollins and others under 42 U.S.C. § 1983 alleging that they used excessive force in violation of his civil rights. (*See* Dkt. No. 1 at 3–4); (Dkt. No. 1-1). On May 26, 2023, the Court dismissed all Defendants except Rollins. (Dkt. No. 31). A summons and Burke's Complaint were served on Rollins by certified mail at his place of employment on August 11, 2023. (Dkt. No. 42). Rollins did not file an answer or otherwise appear.

On September 26, 2023, Burke moved for default judgment against Rollins. (Dkt. No. 44); (*see also* Dkt. Nos. 46, 48). On January 12, 2024, the Court ordered Rollins to show cause by January 22 why default should not be entered against him under Rule 55 of the Federal Rules of Civil Procedure. (Dkt. No. 51). Rollins did not respond. Accordingly, on February 22, 2024, default was entered against Rollins. (Dkt. No. 53).

On November 1, 2024, the Court held an evidentiary hearing to determine the damages owed to Burke. (Dkt. No. 76). Once again, Rollins failed to appear. (*See id.* at 1).

At the hearing, Burke testified under oath about the damages he sustained from the events on December 15, 2021. (*See id.* at 3–4). He testified that Rollins and other TDCJ officers came into his cell, ripped off his clothes, and "simulated a . . . rape." (*Id.* at 6). Burke further testified that Rollins punched him in the head and neck twice, causing "swelling and pain for at least one week" and a "loss of mobility that lasted three

months." (*Id.* at 6–7). After the incident, he stated that his "face was swollen" and he had "a black-and-blue contusion" on his neck. (*Id.* at 7). Burke testified that he experienced pain during the incident and continued pain and swelling for up to a week afterward. (*Id.*).

Burke also testified that his loss of mobility made it difficult for him to move around, carry out daily activities, and—after bonding out shortly after the incident—find employment. (*Id.*). After he was released, he underwent therapy to recover from his injuries, including chiropractic care and cryotherapy. (*Id*. at 5, 7). He testified that he paid $1,500 out of pocket for these therapies, (*id.* at 7–9), and $350 in court costs, (*id.* at 9).

Burke did not testify to any non-physical injuries, such as anxiety, sleeplessness, or PTSD. For damages related to the alleged simulated rape, Burke stated only: "I believe that, from studying case law, if there's a sexual element, that can help elevate the—the number [of damages]." (*Id.* at 8).

Finally, Burke speculated about two possible motives for the attack. First, he testified that he believes the attack was "an act of antisemitism" based on his appearance and the fact that he received kosher meals. (*Id.*). He further testified that he believed Rollins "made some sort of antisemitic comments," (*id.*), though he did not elaborate on what those comments were. Second, Burke testified that he believes the attack was punishment for his "bad behavior" in tampering with the sprinkler system to force a cell transfer. (*Id.*).

The only other evidence Burke presented at the hearing was TDCJ's incident report related to the event. (Dkt. No. 76 at 4); (Dkt. No. 1-1). The report generally

corroborates Burke's Complaint and sworn testimony. It states that Burke tampered with the sprinkler system inside his original cell, was handcuffed before being moved, was transferred by several officers—including Rollins—and was in a physical altercation as a result of the move. (Dkt. No. 1-1 at 1).

The report confirms that officers ordered Burke to lie down so that they could remove his clothing, and he resisted. (*Id.*). It also states that officers began removing his socks, shoes, and pants while he resisted, and one officer displayed his taser. (*Id.*). An officer used a rescue tool to cut away Burke's shirt while the other officers restrained him on the ground. (*Id.*). The report does not mention any simulated rape. (*See generally id.*). But it confirms that Rollins struck Burke in the head and neck with a closed fist several times, although it states that this occurred after Burke struck Rollins in the forehead with a closed fist once he had been released from handcuffs. (*Id.*).

The hearing concluded with Burke's damages requests: $1,850 for out-of-pocket expenses and court costs, (*see* Dkt. No. 76 at 9), $7,500 for compensatory damages or pain and suffering, and $40,000 in punitive damages, (*id.* at 10).

## II. LEGAL STANDARD

"After a default judgment, the plaintiff's well-pleaded factual allegations are taken as true, except regarding damages." *United States ex rel. M-CO Constr., Inc. v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). "Thus, the district court takes as true the facts asserted by a plaintiff against a defaulting defendant," *Escalante v. Lidge*, 34 F.4th 486, 492 (5th Cir. 2022), but a party entitled to judgment by default is required to prove the appropriate amount of damages, *see L. Funder, LLC v. Munoz*, 924 F.3d 753, 761–62 (5th

Cir. 2019), *as revised* (June 6, 2019); *Oberstar v. FDIC*, 987 F.2d 494, 505 n.9 (8th Cir. 1993) (citing Fed. R. Civ. P. 55(b)(2)). If damages sought against a defendant are not ascertainable from documentary evidence or affidavits, the court may hold a hearing to determine the amount of damages. *See UnitedHealthcare Ins. v. Holley*, 724 F.App'x 285, 289 (5th Cir. 2018) (per curiam) (quoting *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979) (per curiam)); *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993). "[T]he Court must then determine whether the relief requested is appropriate based on the governing law." *T-Mobile USA Inc. v. Shazia & Noushad Corp.*, No. 3:08-CV-00341, 2009 WL 2003369, at *3 (N.D. Tex. July 10, 2009).

"Damages awarded under 42 U.S.C. § 1983 are governed by common law tort principles." *Combs v. Holman*, 134 F.App'x 669, 670 (5th Cir. 2005) (per curiam) (citing *Sockwell v. Phelps*, 20 F.3d 187, 192 (5th Cir. 1994)); *Memphis Cmty. Sch. Dist. v. Stachura*, 477 U.S. 299, 306–07, 106 S.Ct. 2537, 2542–43, 91 L.Ed.2d 249 (1986). A plaintiff may seek compensatory damages and punitive damages. *Stachura*, 477 U.S. at 306–07 & n.9, 106 S.Ct. at 2542–43 & n.9. A plaintiff may also seek costs and reasonable attorney's fees. *DeLeon v. Abbott*, 687 F.App'x 340, 342 (5th Cir. 2017) (per curiam); *Universal Amusement Co. v. Vance*, 587 F.2d 159, 172 (5th Cir. 1978), *aff'd*, 445 U.S. 308, 100 S.Ct. 1156, 63 L.Ed.2d 413 (1980).

## III. DISCUSSION

Because the damages sought were not readily ascertainable from documentary evidence or affidavits, the Court held a hearing to determine the appropriate amount. (*See* Dkt. No. 76); Fed. R. Civ. P. 55(b)(2). The only evidence Burke presented was his

sworn testimony, (Dkt. No. 76), and the TDCJ incident report related to the event, (Dkt. No. 1-1). The Court evaluates Burke's evidence to determine what "relief requested is appropriate based on the governing law." *T-Mobile USA*, 2009 WL 2003369, at *3.

### A. COMPENSATORY DAMAGES

"[C]ompensatory damages may include . . . out-of-pocket loss and other monetary harms," as well as injuries such as "mental anguish and suffering." *Stachura*, 477 U.S. at 307, 106 S.Ct. at 2543 (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974)); *Oby v. Sander*, 778 F.App'x 326, 327 (5th Cir. 2019) (per curiam).

Beginning with Burke's out-of-pocket medical costs, he testified that he spent $1,500 on therapies, including chiropractic care and cryotherapy. (Dkt. No. 76 at 5, 7–8). Based on Burke's sworn description of the events and the incident report's corroboration of that description, Burke has proved by a preponderance of the evidence that the therapies he received while on bond were causally connected to the events of December 15, 2021. Therefore, Burke has established a causal connection between the damages he seeks and the injuries he suffered. *See Posos v. Ramos*, No. 5:11-CV-00479, 2011 WL 13180219, at *6 (W.D. Tex. June 15, 2011). Accordingly, the Court awards Burke $1,500 in medical expenses.

Burke also testified that the incident made it difficult for him to find employment for several months after he was released on bond. (Dkt. No. 76 at 7). But he did not provide specifics about any jobs he applied for and was denied, including any salaries those jobs might have offered. Nor did he offer any evidence that he was denied

employment because of injuries stemming from the altercation with Rollins. Accordingly, Burke has failed to provide sufficient evidence of monetary damages for lost wages or other employment-related losses.

In addition to seeking direct monetary relief, Burke requests damages for pain and suffering or compensatory damages. (*Id.* at 10). "Physical injury, pain and suffering, personal humiliation, mental distress, and embarrassment are compensable under § 1983." *Jones v. Conner*, 233 F.3d 574, at *1 (5th Cir. 2000) (unpublished table decision) (citing *Baskin v. Parker*, 602 F.2d 1205, 1209 (5th Cir. 1979) (per curiam)); *Knight v. Kirby Offshore Marine Pac., LLC*, 983 F.3d 172, 180 (5th Cir. 2020) ("General damages are available for pain and suffering and their negative impact on one's normal life routines."); *Thompkins v. Belt*, 828 F.2d 298, 301–02 (5th Cir. 1987).

But valuing "damages for pain and suffering . . . presents unique challenges." *Recio v. Vasquez*, No. 5:18-CV-00264, 2023 WL 2144300, at *8 (N.D. Tex. Feb. 2, 2023) (citing *Cowart v. Erwin*, 837 F.3d 444, 455 (5th Cir. 2016)), *report and recommendation adopted*, 2023 WL 2142984 (N.D. Tex. Feb. 21, 2023). "When a damage award includes recovery for pain and suffering,"—which are, "to a large degree, not susceptible to monetary quantification"—the factfinder has "especially broad" discretion. *Cowart*, 837 F.3d at 455 (quoting *Seidman v. Am. Airlines, Inc.*, 923 F.2d 1134, 1141 (5th Cir. 1991)); *see also Sulkowska v. City of New York*, 129 F.Supp.2d 274, 308 (S.D.N.Y. 2001) ("[T]he law does not provide a precise formula by which pain and suffering and emotional distress may be properly measured and reduced to monetary value.").

When courts act as factfinders, they may consider pain-and-suffering awards in cases with similar facts. *See, e.g.*, *Johnson v. Hankins*, 582 F.App'x 306, 308 (5th Cir. 2014) (per curiam); *Wheat v. United States*, 860 F.2d 1256, 1259 (5th Cir. 1988); *Recio*, 2023 WL 2144300, at *8. But while "comparing damage awards in similar cases is helpful," the Fifth Circuit has emphasized that "each case depends on its own facts." *Wheat*, 860 F.2d at 1259. Analogous cases "provide an objective frame of reference, but they do not control [a court's] assessment of individual circumstances." *Id.* "[C]ommon sense dictates . . . that reference to other awards is more or less useful in relation to the number of cases available for comparison as well as the similarity between those cases." *Id.* (quoting *Wakefield v. United States*, 765 F.2d 55, 59–60 (5th Cir. 1985)). "Consequently, while a comparison with other awards might serve as a point of reference, such comparison is not controlling." *Id.* (citation modified) (quoting *Wakefield*, 765 F.2d at 59–60). In light of this guidance, the Court begins by assessing comparable cases to "set[] an objective frame of reference for [its] inquiry" before adjusting for the facts presented here. *Id.*

Determining an appropriate award for pain and suffering in this case is challenging. First, to find comparable cases, the Court must identify the pain and suffering Burke experienced. But Burke's allegations are limited and vague. The Court assumes that he experienced pain during the beating. *See Johnson*, 582 F.App'x at 308; *cf.* *Montano v. Orange County*, 842 F.3d 865, 880 (5th Cir. 2016) ("Texas law permits juries to conclude from 'general experience and common sense' that someone suffered pain." (quoting *Hamburger v. State Farm Mut. Auto. Ins.*, 361 F.3d 875, 884 (5th Cir. 2004))). Beyond that, Burke's only description is that he experienced pain and swelling for a week

and "a loss of mobility that lasted up to three months," which made it harder for him to move around and "carry out [his] daily activities of living." (Dkt. No. 76 at 7).

Further complicating the analysis, the two cases with injuries most comparable to Burke's—bruising, swelling, residual pain, and immobility without the need for serious medical treatment—resulted in very different damages awards. *Compare Hay v. City of Irving*, 893 F.2d 796, 797–98 (5th Cir. 1990) (per curiam) (affirming jury award of $325 for physical pain and mental anguish to intellectually disabled arrestee subjected to choke holds and nightstick blows, resulting in serious injuries to arrestee's leg and jaw) *with Johnson v. Hankins*, No. 3:08-CV-00632, 2013 WL 3289034, at *3 (S.D. Miss. June 28, 2013) (affirming $15,000 award for pain and suffering where inmate was "repeatedly punched, stomped, and kicked . . . to the point where he was visibly bruised and limping"), *aff'd*, 582 F.App'x 306 (5th Cir. 2014) (per curiam).

Casting a wider net for analogous cases provides some guidance, but most Section 1983 excessive-force cases involve more egregious conduct and more severe, better-documented injuries than Burke's. For example, in *Benoit v. Bordelon*, the Fifth Circuit affirmed a $15,000 compensatory award where an inmate was choked while handcuffed until he passed out and spat blood for three days, which was corroborated by eyewitness testimony. 596 F.App'x 264, 265–67, 270 (5th Cir. 2015). Similarly, in *Cowart v. Erwin*, the Fifth Circuit affirmed a $10,000 award where an inmate was "taken to the floor, kicked repeatedly in the head, ribs, and groin, and sprayed with pepper spray" until he lost consciousness. No. 3:10-CV-01800, 2015 WL 1578108, at *1 (N.D. Tex. Apr. 9, 2015), *aff'd*, 837 F.3d 444 (5th Cir. 2016). The inmate's injuries—including a perforated eardrum, neck

sprain, multiple contusions, and permanent hand weakness—were confirmed by eyewitness testimony, medical records, and photographs. *Cowart*, 837 F.3d at 454–55; *Cowart*, 2015 WL 1578108, at *8; *see also Recio*, 2023 WL 2144300, at *8 (awarding $25,000 for injuries from being forced to fight another inmate, resulting in extensive "bruises, cuts, and fractured ribs"); *cf. Henry v. N. Tex. State Hosp.*, No. 7:12-CV-00198, 2014 WL 1744109, at *4 (N.D. Tex. Apr. 30, 2014) (awarding $10,000 where state-ward plaintiff required a three-day hospitalization).

These cases suggest that an award of $10,000 to $15,000 is typical when a prison official uses excessive force against an inmate. But the Court must consider that guidance in light of this case's facts and evidence. *See Wheat*, 860 F.2d at 1259. Burke's pain and suffering from punches, bruising, swelling, and unspecified mobility issues is not comparable to that involving unconsciousness,[3] spitting up blood,[4] a ruptured eardrum,[5] fractured ribs,[6] or hospitalization.[7]

Moreover, Burke has offered minimal evidence supporting his damages allegations. Although medical or eyewitness testimony is not required to recover compensatory damages, *see Benoit*, 596 F.App'x at 269; *Johnson*, 582 F.App'x at 308; *Vadie v. Miss. State Univ.*, 218 F.3d 365, 377 (5th Cir. 2000), their absence—combined with

---

3 *Benoit*, 596 F.App'x at 265–67, 270; *Cowart*, 2015 WL 1578108, at *1; *Henry*, 2014 WL 1744109, at *4.

4 *Benoit*, 596 F.App'x at 265–67, 270.

5 *Cowart*, 837 F.3d 444 at 455.

6 *Recio*, 2023 WL 2144300, at *8.

7 *Henry*, 2014 WL 1744109, at *4.

Burke's vague description of his injuries—distinguishes his case from those in which courts have awarded or affirmed larger sums, *compare* (Dk. No. 76 at 7) (Burke's testimony) *with Benoit*, 596 F.App'x at 265–67, 270 (eyewitness corroboration); *Cowart*, 837 F.3d at 454–55 (eyewitnesses, medical records, and photographs); *Henry*, 2014 WL 1744109, at *4 (medical testimony).

Without more specific and corroborated evidence, the Court cannot assess the full scope or seriousness of Burke's injuries or justify awarding him the $7,500 he seeks. As the Fifth Circuit has explained, while a plaintiff's testimony alone may support a finding of actual injury, it may be insufficient to justify a substantial damages award absent supporting detail. *See Vadie*, 218 F.3d at 377–78.

Balancing Burke's facts and evidence against the guidance from comparable excessive-force cases, the Court finds that an award of $1,500 for pain and suffering is appropriate. Adding this to the $1,500 awarded for medical expenses, Burke's total compensatory damages award is $3,000. Accordingly, the Court awards Burke $3,000 for compensatory damages.

**B. PUNITIVE DAMAGES**

Burke also requests $40,000 in punitive damages. (Dkt. No. 76 at 10). Punitive damages are available under Section 1983 "to punish as well as to deter the commission of similar offenses in the future," but they are considered "a harsh remedy and normally . . . not favored by law." *Heaney v. Roberts*, 846 F.3d 795, 803 (5th Cir. 2017) (quoting *Creamer v. Porter*, 754 F.2d 1311, 1319 (5th Cir. 1985)). They are available only if the defendant's conduct was "motivated by evil motive or intent" or involved "reckless

or callous indifference" to federally protected rights. *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 1640, 75 L.Ed.2d 632 (1983); *Holmes v. Reddoch*, 117 F.4th 309, 320 (5th Cir. 2024) (quoting *Cowart*, 837 F.3d at 455).

Unlike compensatory damages, which are mandatory once liability is established, punitive damages are a "discretionary moral judgment." *Smith*, 461 U.S. at 52, 103 S.Ct. at 1638; *Heaney*, 846 F.3d at 803 ("[U]nlike compensatory damages, punitive damages are never available as a matter of right, no matter how egregious the defendant's conduct may be." (quoting *Hale v. Fish*, 899 F.2d 390, 404 (5th Cir. 1990))). Thus, even if a plaintiff makes "a proper showing to justify an award of punitive damages," the decision to award them remains within the factfinder's discretion. *Fitzgerald v. Harris Cnty. Sheriffs Off.*, No. 4:15-CV-01330, 2018 WL 2046969, at *3 (S.D. Tex. May 1, 2018) (citing *Creamer*, 754 F.2d at 1319); *Heaney*, 846 F.3d at 803.

Additionally, an award of punitive damages must be supported by the well-pleaded factual allegations in the complaint. *See Nishimatsu Const. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975) ("There must be a sufficient basis in the pleadings for the judgment entered."); *SEC v. McDuff*, 697 F.App'x 393, 394 (5th Cir. 2017) (per curiam) ("A default judgment must be 'supported by well-pleaded allegations' and must have 'a sufficient basis in the pleadings.'" (quoting *Nishimatsu*, 515 F.2d at 1206)).

At the Evidentiary Hearing, Burke argued that punitive damages are warranted because Rollins simulated a sexual assault, acted out of antisemitic animus, and sought retribution for Burke's prior behavior. (Dkt. No. 76 at 6, 8). While the Court does not

take these allegations lightly,[8] they cannot form the basis for punitive damages in this case because none appears in Burke's Complaint. (*See* Dkt. No. 1 at 4). Burke's Complaint states only:

> Officer Rollins struck me with a closed fist to my neck and head. This is while 8+ other officers held me down, one drew his tazer [sic], and while I had handcuffs on. Attached is documentation from an Open Records Request, from police record. Very clear evidence my story is true. Other defendants are responsible for Rollins. My head and neck still hurt.

(*Id.*). Based on these allegations, Burke's Complaint requests $75,000,000 in compensatory damages and $500,000,000 in punitive damages. (*Id.*).

Even construing this pleading liberally, Burke makes no mention of an attempted or simulated sexual assault, antisemitism, or retaliation. (*See id.*). Rollins was never served with those accusations, nor did he have an opportunity to contest them. (*See* Dkt. No. 41) (ordering Clerk to serve Rollins with a copy of Burke's Complaint and Court's August 5, 2023, Order). Thus, those allegations are outside the scope of this Court's Default Judgment, (*see* Dkt. No. 53), and they cannot form the basis for a punitive-damages award.

Accordingly, the Court disregards Burke's hearing testimony (and subsequent filings) to the extent that they attempt to expand Rollins's liability beyond the bounds of the well-pleaded allegations in the Complaint. *See Nishimatsu*, 515 F.2d at 1206. Burke's

---

8 *See Tubby v. Allen*, No. 6:16-CV-00972, 2019 WL 4565072, at *6–8 (E.D. Tex. Sept. 3, 2019) (collecting prisoner-sexual-assault cases and analyzing damage awards), *report and recommendation adopted*, 2019 WL 4538028 (E.D. Tex. Sept. 19, 2019).

Complaint alleges that Rollins initiated an excessively forceful physical attack. (Dkt. No. 1 at 4). Those allegations support an award of compensatory damages, but they do not plausibly support an inference of malice or egregious misconduct sufficient to justify punitive damages. *See Smith*, 461 U.S. at 56, 103 S.Ct. at 1640.

The Court therefore finds that Burke is not entitled to punitive damages. *See Lee v. S. Home Sites Corp.*, 429 F.2d 290, 294–95 (5th Cir. 1970) (holding "trial judge did not abuse his discretion" by resolving reasonable doubt against a finding of willfulness "consistent with [the] preponderance of the evidence" standard).

**C. COSTS**

Finally, Burke seeks $350 in court costs. (Dkt. No. 76 at 9). A prevailing party under Section 1983 can recover costs under Federal Rule of Civil Procedure 54(d) and 28 U.S.C. § 1920. *Smith v. Chrysler Grp., LLC*, 909 F.3d 744, 752 (5th Cir. 2018); *U.S. ex rel. Long v. GSDMIdea City, LLC*, 807 F.3d 125, 128 (5th Cir. 2015). Prevailing parties may also recover reasonable attorney's fees and related expenses under 42 U.S.C. § 1988(b). *DeLeon*, 687 F.App'x at 342 (quoting *Associated Builders & Contractors of La., Inc. v. Orleans Par. Sch. Bd.*, 919 F.2d 374, 380 (5th Cir. 1990)). Burke is the prevailing party, and the Court finds his request reasonable. The Court therefore awards him $350 in costs.

* * *

The Court awards Burke: (1) $1,500 in out-of-pocket medical expenses; (2) $1,500 for pain and suffering; (3) $350 in reasonable court costs; and (4) post-judgment interest[9]

---

[9] Post-judgment interest "is awarded as a matter of course." *Meaux Surface Prot., Inc. v. Fogleman*, 607 F.3d 161, 173 (5th Cir. 2010) (citing 28 U.S.C. § 1961(a)). Indeed, "district courts do not have the discretion to deny post-judgment interest on monetary judgments." *Paisano Cap. SA* (continue)

at the applicable federal rate.[10] In total, Burke is entitled to recover $3,350 from Officer Rollins, plus post-judgment interest at the applicable federal rate of 3.90%. *Post-Judgment Interest Rates*, U.S. Dist. & Bankr. Cts. of S. Dist. of Tex., https://www.txs.uscourts.gov/page/post-judgment-interest-rates-2025 (last visited Aug. 18, 2025).

Burke is responsible for enforcing and collecting the judgment. (Dkt. No. 76 at 12–13); *Fitzgerald*, 2018 WL 2046969, at *5.

## IV. CONCLUSION

For the reasons above, the Court **AWARDS** the following amounts to Plaintiff Andrew Burke:

1) $3,000 in compensatory damages;
2) $350 in court costs; and
3) Post-judgment interest at the rate of 3.90%.

It is SO ORDERED.

Signed on August 18, 2025.

**DREW B. TIPTON**
**UNITED STATES DISTRICT JUDGE**

*de CV v. 23 Tex. Produce, Inc.*, No. 3:19-CV-00852, 2019 WL 3239152, at *5 (N.D. Tex. July 18, 2019) (citing *Fairmont Specialty Ins. v. Apodaca*, 234 F.Supp.3d 843, 855 (S.D. Tex. 2017)).

[10] The post-judgment interest rate is based upon the applicable federal rate. *See* 28 U.S.C. § 1961(a).